IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS D. NAVARROLI, on behalf of Plaintiff and a class, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, |
| vs. |
| MEDICREDIT, INC. |
| Defendant. |

Case No. 21-cv-6203

Judge Robert M. Dow, Jr.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's motion to remand [13] this case to the Circuit Court of Cook County, Illinois pursuant to 28 U.S.C. § 1447(c) for lack of federal jurisdiction. For the reasons stated below, Plaintiff's motion to remand [13] is granted and Defendant's request for limited jurisdictional discovery [see 17] is denied as moot. Defendant's motion to dismiss [6] is denied without prejudice. The Clerk is directed to remand this case to the Circuit Court of Cook County for further proceedings. Civil case terminated.

**I.** **Background**

Plaintiff Nicholas D. Navarroli ("Plaintiff") incurred a health care debt for "personal, family and household purchases." [1, at 14, ¶ 13.] Defendant Medicredit, Inc. ("Defendant"), a debt collection agency, sought to recover Plaintiff's debt. [*Id.*, at 14, ¶ 12–13.]

On October 23, 2020, Defendant sent Plaintiff a form collection letter seeking to collect his debt. [*Id.*, at 14, ¶ 14; *id.*, at 22.] The letter conveyed account information, including the amount of debt Plaintiff owed, the identity of Plaintiff's original creditor, and an account number assigned to Plaintiff. [*Id.*, at 22.] Because of certain "markings * * * characteristic of" form letters

generated by a third-party letter vendor and the return address matching the vendor's business address, Plaintiff alleges that Defendant hired such a vendor to create the letter he received. [*Id.*, at 14, ¶ 15–16.] For the third-party letter vendor to "populate[] some or all of [Plaintiff's personal] information into a prewritten template," Defendant must have given the vendor certain personal information about Plaintiff. [*Id.*, at 15, ¶ 17–18.] Specifically, Plaintiff alleges that Defendant gave his name, address, status as debtor, details of his account, and other personal information to a third-party letter vendor to create the letter he received. [*Id.*, at 15, ¶ 17.]

On October 12, 2021, Plaintiff filed a putative class action in the Circuit Court of Cook County, Chancery Division, alleging that Defendant's disclosure of his information to a third-party letter vendor violated 15 U.S.C. § 1692, the Fair Debt Collection Practices Act of 1977 ("FDCPA"), which prohibits various abusive debt collection practices. [*Id.*] According to Plaintiff, Defendant violated § 1692c(b) by communicating his personal information with a third-party letter vendor.[1] [*Id.* at 17, ¶ 30.]

On November 19, 2021, Defendant timely removed the action to federal court on the basis of federal question jurisdiction. [*Id.*] On November 22, 2021, Defendant moved to dismiss Plaintiff's complaint for failure to state a claim. [6.] The next day, Plaintiff moved for remand to Illinois state court on the ground that he lacked Article III standing. [13.]

---

[1] Plaintiff additionally alleges that "Defendant violated 15 U.S.C. § 1692f by using unfair means in connection with the collection of a debt – disclosing personal information about Plaintiff to third parties not expressly authorized under the FDCPA." [1, at 17, ¶ 31.] As a preliminary matter, Plaintiff does not specify which subsection of § 1692f he alleges that Defendant violated and § 1692f does not make Defendant liable for such conduct. See generally 15 U.S.C. § 1692f. Because Plaintiff's alleged violation regarding disclosure mirrors his § 1692c(b) claim and appears within the same count, the Court interprets Plaintiff's complaint as only alleging a § 1692c(b) claim. As such, the Court discusses whether Plaintiff has standing based on his claim under § 1692c(b). Regardless, the facts underlying either potential violation of § 1692 are equally inadequate to establish an injury-in-fact such that Plaintiff lacks standing under either section.

## II. Legal Standard

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in state court to federal court when the action could have been originally filed in federal court. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). The party seeking to remove the action has the burden of demonstrating jurisdiction, including subject-matter jurisdiction. *Id.* The plaintiff's choice of forum is presumed to be valid, and the Court must resolve doubts regarding jurisdiction in favor of remand. *Id.*; *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) ("Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his * * * forum.").

## III. Analysis

The key issue before this Court is whether Plaintiff has Article III standing. Because "[s]tanding is a threshold question in every federal case," the Court must determine whether standing exists before considering the merits of Plaintiff's claim. *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). As Defendant invoked federal jurisdiction by removing this suit to federal court, it has the burden of establishing that Plaintiff has standing. *Schur*, 577 F.3d at 758.

To have Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); see also *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). At issue in the present motion is the first requirement—that Plaintiff suffered an injury-in-fact. An injury-in-fact must be both "concrete and particularized." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). An injury is concrete if it is "real, and not

abstract." *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo*, 578 U.S. at 340). Both tangible and intangible injuries can qualify as concrete harm. See *id.* at 2205 (citing *Spokeo*, 578 U.S. at 340–41) (recognizing that "[v]arious intangible harms can * * * be concrete," including "reputational harms, disclosure of private information, and intrusion upon seclusion").

To determine whether an intangible injury is sufficiently concrete for standing purposes, the Court must look at history and Congress's judgment. *Spokeo*, 578 U.S. at 340–41. In looking at history, the Supreme Court has observed that courts should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341; see also *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (internal quotations marks and quotation omitted) (observing that when courts seek to analogize to harms recognized at common law, courts are instructed to look for a "close relationship in kind, not degree"); *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1191–92 (7th Cir. 2021) (noting that when a court is determining whether the challenged conduct bears a close relationship to tort comparator, it must look at a single tort comparator, not a group of such comparators like "invasion of privacy" torts).

While Congress can "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," *Spokeo*, 578 U.S. at 341 (quoting *Lujan*, 504 U.S. at 578), the injury-in-fact requirement is not automatically satisfied whenever plaintiff alleges a "bare procedural violation, divorced from any concrete harm," *id.* Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*; see also *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 779 (7th Cir. 2021) (noting that "a breach of the [FDCPA] does not, by itself, cause an injury in fact"). For example, an FDCPA violation might cause concrete harm "if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or

4

otherwise alters a plaintiff's response to a debt." *Markakos*, 997 F.3d at 779 (citing *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020)).

Plaintiff seeks to remand his FDCPA claim to Illinois state court for lack of Article III standing. [13, 18.] Plaintiff contends that he has not suffered a concrete injury-in-fact; rather, Plaintiff argues that he has only alleged a procedural FDCPA violation devoid of any concrete harm.[2] [*Id.*] Defendant counters that Plaintiff's statutory allegation is sufficient to support standing. [17.] As Defendant explains, Plaintiff has alleged that Defendant intruded on his private affairs, which constitutes concrete intangible harm sufficient to rise to Article III standing. [*Id.*]

In his complaint, Plaintiff alleges that Defendant violated § 1692c(b). [1, at 17, ¶ 30.] Section 1692c(b) prohibits a debt collector from communicating "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" without "the prior consent of the consumer given directly to the debt collector." 15 U.S.C. § 1692c(b). Plaintiff alleges that Defendant violated this subsection by communicating his "personal and confidential information" to a third-party letter vendor. [1, at 15, ¶ 22.]

In their briefs [13, 17–18], both parties reference the current intra-district split as guidance for this Court's decision. Compare *Keller v. Northstar Location Servs.*, 2021 WL 3709183 (N.D. Ill. Aug. 20, 2021); *Thomas v. Unifin, Inc.*, 2021 WL 3709184 (N.D. Ill. Aug. 20, 2021); *Liu v. Radius Glob. Solutions, LLC*, 2021 WL 4167585 (N.D. Ill. Sept. 14, 2021); and *Liu v. Pioneer*

---

[2] Plaintiff additionally argues that Defendant cannot invoke federal jurisdiction when it argued that its practice of having a third-party letter vendor is "harmless" and cites to cases in which defendants removed to federal court, only to later move to dismiss on grounds that the plaintiff lacks standing. [13, at 2.] Those cases are distinguishable. In all the cases that Plaintiff cites, the defendant argued in its motion to dismiss that plaintiff lacked standing. See *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018); *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 911–12 (N.D. Ill. 2016). In the present case, Defendant moves to dismiss on constitutional grounds. [6.] As such, the cases that Plaintiff cites are inapposite.

5

*Credit Recovery Inc.*, No. 1:21-cv-2875, Dkt. 23 (N.D. Ill. Dec. 3, 2021); with *Quaglia v. NS193, LLC*, 2021 WL 7179621 (N.D. Ill. Oct. 12, 2021); *Liu v. MRS BPO, LLC*, 2021 WL 5630764 (N.D. Ill. Nov. 30, 2021); *Rembert v. Am. Coradius Intl., LLC*, 2022 WL 1211510 (N.D. Ill. April 25, 2022); *Patni v. Resurgent Cap. Servs., L.P.*, 2022 WL 1567069 (N.D. Ill. May 18, 2022); and *Blaise v. Transworld Sys. Inc.*, 2022 WL 3927746 (N.D. Ill. Aug. 30, 2022). These cases rely on the Eleventh Circuit's decision in *Hunstein v. Preferred Collection & Management Services, Inc.*, 994 F.3d 1341 (11th Cir.) ("*Hunstein I*"), and *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 4th 1016 (11th Cir. 2021), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021) ("*Hunstein II*"). Because the parties' briefs precede important caselaw developments, some additional background is necessary.

The Seventh Circuit has not addressed whether a plaintiff alleging a similar § 1692c(b) claim has standing.[3] Several courts in this District have looked to the Eleventh Circuit's decisions in *Hunstein I* and *Hunstein II* for guidance. *Keller*, 2021 WL 3709183, at *2; *Thomas*, 2021 WL 3709184, at *1–2; *Radius Glob. Solutions*, 2021 WL 4167585, at *2; *Pioneer Credit*, No. 1:21-cv-2875, Dkt. 23, at *5–6. In *Hunstein I*, the plaintiff alleged that a debt collector violated § 1692c(b) by disclosing her personal information to a third-party letter vendor, who thereby populated a form collection letter with that information. *Hunstein I*, 994 F.3d at 1344. The Eleventh Circuit reasoned that because § 1692c(b) bore a close relationship to the common law tort of public disclosure of private facts and Congress's judgment indicated that violations of § 1692c(b) constitute a concrete injury, the plaintiff had standing to sue. *Id.* at 1347–49.

---

[3] While the Seventh Circuit has not directly spoken on claims such as Plaintiff's, it has noted when the FDCPA has been used in contravention of its intended purposes, including against third-party companies performing ministerial duties. See, *e.g.*, *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (citations omitted) (labelling as "frivolous" FDCPA claims against "companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters").

6

However, after the Eleventh Circuit's decision in *Hunstein I*, the Supreme Court decided *TransUnion*. 141 S. Ct. at 2190. In *TransUnion*, a group of individual consumers alleged that a credit reporting agency violated the Fair Credit Reporting Act ("FRCA") when it sent false notices to third parties that the consumers were potential threats to national security and failed to use reasonable procedures to ensure the accuracy of its credit files, including maintaining the false notices internally. *Id.* at 2200–02. The Supreme Court found that plaintiffs whose credit reports had been disclosed to third parties had standing because their harm was akin to the reputational harm associated with defamation. *Id.* at 2208–09. On the other hand, the Supreme Court held that plaintiffs whose credit reports had not been disclosed to any third parties lacked standing because the mere existence of inaccurate information not disseminated to third parties did not harm them. *Id.* at 2209–12. Finally, and particularly relevant to this Court's decision, the Supreme Court observed that:

> the plaintiffs also argue that TransUnion "published" the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received. That new argument is * * * unavailing. Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications.

*Id.* at 2210 n.6.

In the wake of *TransUnion*, many courts within this District have held that plaintiffs alleging a violation of § 1692c(b) under similar facts as Plaintiff here did not allege sufficient injury-in-fact for standing purposes. *Quaglia*, 2021 WL 7179621, at *3; *MRS BPO, LLC*, 2021 WL 5630764, at *4; *Rembert*, 2022 WL 1211510, at *2; *Patni*, 2022 WL 1567069, at *1; *Blaise*, 2022 WL 3927746, at *6. After *TransUnion*, the Eleventh Circuit initially maintained its prior holding that the plaintiff had standing. *Hunstein II*, 17 F.4th at 1020; see also *Pioneer Credit*, No. 1:21-cv-2875, Dkt. 23, at *5–6 (relying on *Hunstein II* prior to its later vacation for rehearing *en*

7

*banc*). However, the Eleventh Circuit later vacated its decision and reheard the case *en banc*. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1103, 1104 (11th Cir. 2021).

After briefing on the instant motion was complete, the Eleventh Circuit issued its new *en banc* opinion, holding that the plaintiff alleging a violation under § 1692c(b) on similar facts lacked standing. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, — F.4th —, 2022 WL 4102824, at *6 (11th Cir. 2022) ("*Hunstein III*"). Citing to the Supreme Court's discussion of publicity in the context of defamation in *TransUnion*, the Eleventh Circuit concluded that the plaintiff failed to allege an element "essential to liability" under the comparator tort of public disclosure of private facts: publicity. *Id.* at *2, 6–7. The Eleventh Circuit defined "publicity" as denoting the dissemination of private information to "the public" at large, expressly noting the difference between private and public disclosure of private information as "qualitative, not quantitative." *Id.* at *10. The Eleventh Circuit then reasoned that the debt collector's disclosure of the plaintiff's information to a "single intermediary"—the third-party letter vendor—did not qualify as "publicity" and the plaintiff's alleged violation of § 1692c(b) thus lacked a "close relationship" to the comparator tort. *Id.* at *8. As such, the plaintiff had alleged a statutory violation without concrete harm and therefore lacked standing. *Id.* at *6–9.

With this caselaw in mind and for many of the same reasons relied on by other judges within this District, Defendant cannot show that Plaintiff suffered injury-in-fact sufficient to support Article III standing. Therefore, this Court lacks subject matter jurisdiction over Plaintiff's § 1692c(b) claim.

First, as noted above, *Hunstein I* and *Hunstein II*, which courts within this District relied on to conclude that plaintiffs alleging similar violations had standing and Defendant relies on [20, at 7–8], have been vacated and reversed, with the *en banc* Eleventh Circuit holding that such

8

plaintiffs lack standing. *Hunstein III*, 2022 WL 4102824, at *10. This point is underscored by the Supreme Court's treatment of a similar theory in *TransUnion*. 141 S. Ct. at 2210 n.6. Indeed, as the court in *Quaglia* noted, the Supreme Court in *TransUnion* appeared to reject Plaintiff's theory. *Quaglia*, 2021 WL 7179621, at *4 (internal quotation omitted) (noting that the Supreme Court's discussion of mailing vendor theory "appears dispositive").

Second, utilizing history to "consider whether an alleged intangible harm has a close relationship" to tort at common law, Plaintiff's alleged violation does not have a close relationship with a comparator tort because Plaintiff does not allege publicity. *Spokeo*, 578 U.S. at 341. The closest common law analog to Defendant's alleged violation of § 1692c(b) is public disclosure of private facts. See RESTATEMENT (SECOND) OF TORTS § 652D (1977) ("One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."). The Court focuses on the initial requirement of publicity. As other courts have noted, an essential element to liability for public disclosure of private facts is publicity, which is not satisfied by the transmission of information to a third-party letter vendor for the ministerial purpose of printing a form collection letter. *MRS BPO, LLC*, 2021 WL 5630764, at *4; *Patni*, 2022 WL 1567069, at *2; *Blaise*, 2022 WL 3927746, at *5–6. This Court agrees with this reasoning. In his complaint, Plaintiff has alleged that Defendant disclosed his personal information to a single party, a third-party letter vendor, for the ministerial purpose of creating a form collection letter. [1, at 14–15, ¶ 14–18.] This is not a "public" disclosure of private facts. Rather, as the court in *Blaise* put it, Plaintiff's allegations are "just a communication with a mail vendor, which is not a harm at which Congress aimed by enacting the FDCPA." *Blaise*, 2022 WL 3927746, at *6. Because Plaintiff's alleged violation of

§ 1692c(b) does not have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," Plaintiff has not alleged concrete harm sufficient for standing. *Spokeo*, 578 U.S. at 341.

Third, legislative history indicates that Plaintiff's alleged violation runs afoul of the FDCPA's intended purpose. The FDCPA was intended to prevent abusive collection procedures, including "disclos[ure of] a consumer's personal affairs to friends, neighbors, or an employer." *Quaglia*, 2021 WL 7179621, at *3 (citing S. Rep. No. 95–382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696)). As the court in *Quaglia* noted, it "is difficult to imagine Congress intended for the FDCPA to extend so far as to prevent debt collectors from enlisting the assistance of mailing vendors to perform ministerial duties, such as printing and stuffing the debt collectors' letters, in effectuating the task entrusted to them by the creditors—especially when so much of the process is presumably automated in this day and age." *Quaglia*, 2021 WL 7179621, at *3. The Court agrees that a violation like Plaintiff's lies well outside the scope of the FDCPA.

For these reasons, the Court holds that Plaintiff did not suffer an injury-in-fact sufficient for standing to assert his claim under § 1692c(b). Therefore, the Court lacks subject matter jurisdiction and remands the claim to Illinois state court.

**V.    Conclusion**

For the reasons discussed in this Memorandum Opinion and Order, the Court concludes that Plaintiff's Motion to Remand [13] must be granted. Defendant's request for limited jurisdictional discovery [see 17] is denied as moot. Defendant's motion to dismiss [6] is denied without prejudice. The Clerk is directed to remand this case to the Circuit Court of Cook County

for further proceedings. Civil case terminated.

Dated: September 26, 2022

_____
Robert M. Dow, Jr.
United States District Judge

11